UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

TAKERIA IVORY, an individual,                    CASE NO.:

      Plaintiff,

vs.

GENESIS EDUCATIONAL SERVICES
OF FLORIDA, INC., a Florida Profit Corporation,
d/b/a PALM BEACH ACADEMY OF
HEALTH & BEAUTY,

      Defendant.

_____/

## COMPLAINT

COMES NOW the Plaintiff, TAKERIA IVORY (hereinafter "IVORY" or "Plaintiff"), by and through the undersigned Counsel, and sues the Defendant, GENESIS EDUCATIONAL SERVICES OF FLORIDA, INC., a Florida Profit Corporation, d/b/a PALM BEACH ACADEMY OF HEALTH & BEAUTY (hereinafter "PBA") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01-760.11 (the "FCRA"). In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1) This Court is vested with federal question jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws, pursuant to 28 U.S.C. § 1367.

1

2)      Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. §§ 1391(b) and (c), because all actions relevant to the Plaintiff's claims arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

3)      All conditions precedent to the maintenance of this action have been met or waived.

4)      IVORY timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practices of PBA. A copy of said Charge is attached hereto as **Exhibit "A."**

5)      On or about December 15, 2025, the U.S. Equal Opportunity Commission issued a Notice of Right to Sue, following IVORY's requesting a right to sue. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**.

6)      Plaintiff originally joined a combined action related to her claims in this matter within ninety (90) days of receipt of the Notice of her Right to Sue. Plaintiff was dropped from that action on April 16, 2026, and files this individual Complaint instead.

## PARTIES

7)      Plaintiff, TAKERIA IVORY, is a resident of Palm Beach County, Florida, over the age of eighteen years, and otherwise *sui juis*.

8)      IVORY was and is a member of a protected group under Title VII and the FCRA's prohibitions against race, color, national origin, and sex discrimination and retaliation, namely: IVORY is a woman of African American descent.

9)      At all times material, PBA was and is an "employer" within the meaning of Title VII and the FCRA.

2

10) IVORY was an "employee" of PBA and an "aggrieved person" within the meaning of 42 U.S.C. § 2000e(f) and the FCRA § 760.02(10) during the times relevant to this Action.

**GENERAL ALLEGATIONS**

11) IVORY began her employment with PBA as an Administrative Assistant on June 25, 2024. Three months into the position, she was promoted to Assistant Campus Registrar.

12) During her tenure at PBA, IVORY observed and reported multiple instances of unprofessional and inappropriate workplace conduct by Ms. Ann Bouchard, the Chief Operating Officer of PBA (hereinafter "Bouchard"), including attempts to undermine colleagues, making false allegations of wrongdoing, and theft of school property. Bouchard was a White woman.

13) These incidents made IVORY feel increasingly uncomfortable and targeted for separate and discriminatory treatment at work.

14) On September 9, 2024, Bouchard engaged in sexual harassment by inappropriate and non-consensual physical contact with IVORY. While walking in the hallway, Bouchard groped IVORY's backside three separate times, and asked her, "Is your ass real?"

15) IVORY told Bouchard that she felt deeply uncomfortable and violated by Bouchard's behavior and inappropriate touching. However, IVORY did not know how to report Bouchard's behavior, given that Bouchard was the Chief Operating Officer of PBA, and PBA lacked a Human Resources department which could otherwise handle such complaints.

16) This inability of employees to file complaints against the Chief Operating Officer of PBA created an environment wherein employees were fearful of speaking up about inappropriate behavior, especially by Bouchard or other employees in her good graces, for fear of losing their jobs.

17)     Nonetheless, IVORY still attempted to report such incidents to Campus Director Avis Chapman-Reese (hereinafter "Chapman-Reese") and Campus Registrar Gillian Williams, her direct supervisors (both Black women). She communicated her concerns to both supervisors verbally and by submitting formal incident reports documenting these events, but Bouchard continued to act in an inappropriate manner.

18)     In September 2024, Bouchard accused IVORY and Admissions Coordinator/Career Services Representative James Scruggs (hereinafter "Scruggs") of "flirting" and referred to them as "Keke and Rashard," a reference to two former Black employees who were accused of having an intimate relationship while at the workplace. Scruggs was a Black man.

19)     Bouchard's accusation was entirely unfounded and humiliating, particularly given that IVORY had a familial relationship with Scruggs, and was based purely on the fact that both employees were African American. This comment was humiliating to IVORY.

20)     On October 24, 2024, in the presence of other colleagues, Bouchard raised her voice at IVORY and pointed her finger alarmingly close to her face. IVORY left the room in tears, having been personally attacked and belittled in front of her colleagues. The incident left her feeling bullied, degraded, and emotionally distressed.

21)     On November 15, 2024, IVORY was informed, without warning, that she was being laid off due to "budget cuts." This decision was made just one week after the Accrediting Commission of Career Schools and Colleges (hereinafter "ACCSC"), visited PBA.

22)     IVORY later learned from Gillian Williams that the decision to lay off multiple employees of color, including IVORY, had been planned for some time. However, the management team had refrained from carrying out these layoffs before the ACCSC visit to avoid disrupting the accreditation process.

23)     Every person laid off in this mass termination was a person of color. No White employees were affected. When IVORY raised this concern to management, she was told that "it was not [management's] fault" that Chapman-Reese had hired "a bunch of Black people." This comment was not only grossly inappropriate, but it also reflected a pattern of discriminatory behavior within the organization that motivated the terminations.

24)     The timing and makeup of the layoffs, the lack of transparency, and the discriminatory comments made about employees of color created a toxic and hostile work environment at PBA, and were based purely on discriminatory animus.

25)     PBA has exhibited a pattern of mistreating and/or terminating non-White individuals, replacing each of them, including IVORY, with a White individual. Those individuals included, but were not limited to:

i)   **Amaya Williams:** Former Front Desk Administrator who, while visibly pregnant and managing a high-risk pregnancy, was subjected to repeated verbal abuse by a male supervisor, denied pregnancy accommodations, threatened with termination if she reported misconduct, and ultimately terminated in a mass layoff that exclusively affected employees of color.

ii)  **Ashaki Sypher:** Former Director of Admissions and later Career and Student Services Director who was subjected to sexualized and racially charged harassment by management, had her position unilaterally changed with substantially increased responsibilities and no corresponding pay increase, and was ultimately forced to resign;

iii) **Avis Chapman-Reese:** Former Campus Director who was repeatedly subjected to race- and sex-based harassment and discrimination by PBA management, had her

supervisory authority undermined when she raised concerns about misconduct, and was ultimately forced to resign and then terminated early in retaliation for her complaints;

iv) **Gillian Williams:** Former Campus Registrar who was subjected to repeated racial slurs, body shaming, physical assault by PBA's CFO, asked to falsify records during an accreditation audit, denied workers' compensation for a work-related injury, and terminated in a mass layoff that exclusively affected Black administrative staff;

v) **Gwendolyn Tucker:** Former Director of Career Services who was subjected to race-based harassment and discrimination, was retaliated against for advocating on behalf of her Black colleagues, and was terminated in a mass layoff of employees of color.

vi) **James Scruggs:** Former Admissions Coordinator and later Career Services Representative who was subjected to ongoing racially motivated harassment about his appearance, falsely accused of timesheet fraud, unilaterally transferred to a new role with increased duties and no pay increase, and ultimately terminated; and

vii) **Nuwan Liyanapatabendi:** Former Career Services Representative who was subjected to discriminatory comments regarding his speech impediment, skin tone, national origin, and cultural background, refused a transfer based on his disability, and terminated in a mass layoff targeting employees of color.

## COUNT I – RACE AND COLOR DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (Disparate Treatment)

26) Plaintiff, TAKERIA IVORY, realleges and incorporates by reference the allegations in paragraphs 1 through 25 above as if fully set forth herein.

27) IVORY is a member of a protected class due to her race (African American).

28)     At all times necessary, IVORY was qualified to perform her duties as an Administrative Assistant, and later as Assistant Campus Registrar.

29)     During the course of IVORY's employment with PBA, IVORY was subjected to a discriminatory, hostile, and offensive work environment because of her race (African American), as more fully described in the General Allegations.

30)     The discriminatory, hostile, and offensive actions of IVORY's supervisors and co-workers included, but were not limited to, the following:

i) Subjecting IVORY to sexualized harassment by Bouchard, including by inappropriate and non-consensual physical contact and sexualized comments about IVORY and Scruggs;

ii) Consistently disregarding IVORY's complaints regarding unconsented physical touching, inappropriate conduct, harassment, and racist, sexist, and ableist conduct by Bouchard and other members of PBA management, while allowing Bouchard and other members of PBA management to engage in such conduct without discipline or consequence;

iii) Knowingly tolerating and endorsing racially discriminatory conduct by White staff and students towards Black individuals, while imposing severe and immediate discipline on Black employees for conduct that was routinely excused or ignored when committed by White employees; and

iv) Ultimately terminating IVORY's employment in a mass layoff of PBA's employees of color.

31)     The offensive and discriminatory conduct referred to in both the General Allegations and Paragraph 30 was offensive to IVORY and would be offensive to a reasonable person.

32)     IVORY was subjected to the conduct referred to in the General Allegations and Paragraph 30 of this Complaint because she is African American.

33)     IVORY's supervisor directed the conduct referred to in this Complaint and Paragraph 30 to IVORY.

34)     The termination of IVORY's employment constituted an adverse employment action taken against her, which was causally related to IVORY's race.

35)     Similarly situated non-African American employees were treated more favorably by Bouchard than IVORY. Specifically, the conduct endured by IVORY as referred to in the General Allegations and Paragraph 30 of this Complaint was not faced by IVORY's non-African American counterparts.

36)     As a direct and proximate result of the foregoing, IVORY has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

37)     Any alleged nondiscriminatory reason for this treatment by PBA is a mere pretext for the actual reason for discriminating against IVORY for her race.

38)     What is more, the aforementioned actions of PBA were willful, wanton, intentional, and done with malice or with reckless indifference to IVORY's statutorily protected rights and the consequences of such actions, such that IVORY is entitled to punitive damages.

39)     As a result of the deprivations of rights at the hands of PBA, IVORY has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

8

### COUNT II – RACE AND COLOR DISCRIMINATION
### IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Disparate Treatment)

40) Plaintiff IVORY realleges and incorporates by reference the allegations in paragraphs 1 through 25 above as if fully set forth herein.

41) At all times material hereto, PBA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

42) IVORY is a member of a protected class due to her race (African American).

43) At all times necessary, IVORY was qualified to perform her duties as an Administrative Assistant, and later as Assistant Campus Registrar.

44) During the course of IVORY's employment with PBA, IVORY was subjected to a discriminatory, hostile, and offensive work environment because of her race (African American), as more fully described in the General Allegations.

45) The discriminatory, hostile, and offensive actions of her supervisors and co-workers included, but were not limited to, the following:

> i) Subjecting IVORY to sexualized harassment by Bouchard, including by inappropriate and non-consensual physical contact and sexualized comments about IVORY and Scruggs;
>
> ii) Consistently disregarding IVORY's complaints regarding unconsented physical touching, inappropriate conduct, harassment, and racist, sexist, and ableist conduct by Bouchard and other members of PBA management, while

allowing Bouchard and other members of PBA management to engage in such conduct without discipline or consequence;

iii) Knowingly tolerating and endorsing racially discriminatory conduct by White staff and students towards Black individuals, while imposing severe and immediate discipline on Black employees for conduct that was routinely excused or ignored when committed by White employees; and

iv) Ultimately terminating IVORY's employment in a mass layoff of PBA's employees of color.

46) The discriminatory conduct referred to in the General Allegations and Paragraph 45 was offensive to IVORY and would be offensive to a reasonable person.

47) IVORY was subjected to the conduct referred to in the General Allegations and Paragraph 45 of this Complaint because she is African American.

48) IVORY's colleagues and supervisors directed the conduct referred to in this Complaint to IVORY and also failed to address it.

49) The termination of IVORY's employment constituted an adverse employment action taken against her, which was causally related to IVORY's race.

50) Similarly situated non-African American employees were treated more favorably by PBA's supervisors than IVORY. Specifically, the conduct endured by IVORY as referred to in the General Allegations and Paragraph 45 of this Complaint was not faced by IVORY's non-African American counterparts.

51) As a direct and proximate result of the foregoing, IVORY has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

10

52) Any alleged nondiscriminatory reason for this treatment by PBA is a mere pretext for the actual reason for discriminating against IVORY for her race.

53) PBA's actions were malicious and were recklessly indifferent to IVORY's rights pursuant to Fla. Stat. § 760.10.

54) The aforementioned actions of PBA were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

55) IVORY has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

**COUNT III – SEX DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
(Disparate Treatment)**

56) Plaintiff IVORY incorporates the allegations contained in Paragraphs 1 through 25 as if fully set forth herein.

57) Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex [i.e. gender], or national origin." 42 U.S.C. § 2000e et seq.

58) PBA is an "employer" as defined by Title VII.

59) IVORY is a member of a protected class of female citizens.

60) At all times necessary, IVORY was qualified to perform her duties as an Administrative Assistant, and later as Assistant Campus Registrar.

61)     During the course of IVORY's employment with PBA, IVORY was subjected to a discriminatory, hostile and offensive work environment because of her sex (female), as more fully described in the General Allegations.

62)     The offensive and discriminatory conduct referred to in the General Allegations was offensive to IVORY and would be offensive to a reasonable person.

63)     IVORY was subjected to the conduct referred to in the General Allegations of this Complaint because she is female, specifically, a black female.

64)     Her superior directed the conduct referred to in this Complaint to IVORY.

65)     PBA's sexual harassment of IVORY, refusal to address the sexual harassment, and ultimate termination of her employment as a result of her refusal to engage with the sexual harassment constituted adverse employment actions against her which were causally related to IVORY's sex (female).

66)     Similarly situated male employees were treated more favorably by IVORY's supervisors at PBA than IVORY. Specifically, the conduct endured by IVORY as referred to in the General Allegations of this Complaint was not faced by IVORY's male counterparts.

67)     As a direct and proximate result of the foregoing, IVORY has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

68)     Any alleged nondiscriminatory reason for this treatment of IVORY by PBA is a mere pretext for the actual reason for discriminating against her based on her sex.

69)     IVORY has suffered damages on an on-going and continuous nature.

70)     As a result of the deprivations of rights at the hands of PBA, IVORY has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT IV – SEX DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Disparate Treatment)

71)	Plaintiff IVORY incorporates the allegations contained in Paragraphs 1 through 25 as if fully set forth herein.

72)	At all times material hereto, PBA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

73)	IVORY is a member of a protected class of female citizens.

74)	At all times necessary, IVORY was qualified to perform her duties as an Administrative Assistant, and later as Assistant Campus Registrar.

75)	During the course of IVORY's employment with PBA, IVORY was subjected to a discriminatory, hostile and offensive work environment because of her sex (female), as more fully described in the General Allegations.

76)	The offensive and discriminatory conduct referred to in the General Allegations was offensive to IVORY and would be offensive to a reasonable person.

77)	IVORY was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

78)	Her superior directed the conduct referred to in this Complaint to IVORY.

79)	PBA's sexual harassment of IVORY, refusal to address the sexual harassment, and ultimate termination of her employment as a result of her refusal to engage with the sexual harassment constituted adverse employment actions against her which were causally related to IVORY's sex (female).

13

80) Similarly situated male employees were treated more favorably by IVORY's supervisor at PBA than IVORY. Specifically, the conduct endured by IVORY as referred to in the General Allegations of this Complaint was not faced by IVORY's male counterparts.

81) As a direct and proximate result of the foregoing, IVORY has suffered and continues to suffer embarrassment, humiliation, emotional distress and economic losses.

82) Any alleged nondiscriminatory reason for this treatment of IVORY by PBA is a mere pretext for the actual reason for discriminating against her based on her gender.

83) PBA's actions were malicious and were recklessly indifferent to IVORY's rights pursuant to Fla. Stat. § 760.10.

84) The aforementioned actions of PBA were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

## COUNT V – RACE, COLOR, AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
### (Retaliation)

85) Plaintiff IVORY realleges and incorporates by reference the allegations in paragraphs 1 through 25 above as if fully set forth herein.

86) Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 et seq.

87) IVORY is a member of a protected class due to her race (African American), and sex (female), who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

14

88)    IVORY engaged in a statutorily protected expression. Namely, she made complaints to Bouchard and Chapman-Reese about the discriminatory treatment exhibited by Bouchard and other members of PBA management, resulting in a hostile work environment.

89)    PBA management took no further or definitive action to resolve the harassment and discrimination taking place in the workplace, instead allowing it to continue and increase in frequency and severity until ultimately terminating IVORY's employment in retaliation.

90)    A causal connection exists between the complaints to Bouchard made by IVORY with regard to the discriminatory treatment (i.e. a statutorily protected expression) and the adverse employment faced by IVORY, namely her termination.

91)    PBA ultimately terminated IVORY for pretextual reasons as a result of her complaints of harassment and discrimination due to her race, color, and sex.

92)    As a direct and proximate result of PBA's conduct and its employees' actions, IVORY has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits which she would have continued to receive had she not been unlawfully terminated.

93)    What is more, the unlawful employment practices complained of above committed by PBA were willful, wanton, intentional and with malice or with reckless indifference to IVORY's statutorily protected rights, such that IVORY is entitled to punitive damages.

94)    IVORY has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT VI – RACE, COLOR, AND SEX DISCRIMINATION
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Retaliation)

95)    Plaintiff IVORY realleges and incorporates by reference the allegations in paragraphs 1 through 25 above as if fully set forth herein.

96)    The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

97)    PBA is an "employer" as defined by § 760.09(7) of the Florida Statutes.

98)    IVORY is a member of a protected class due to her race (African American), and sex (female), who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992.

99)    IVORY engaged in a statutorily protected expression. Namely, she made complaints to Bouchard and Chapman-Reese about the discriminatory treatment exhibited by Bouchard and other members of PBA management, resulting in a hostile work environment.

100)    PBA management took no further or definitive action to resolve the harassment and discrimination taking place in the workplace, instead allowing it to continue and increase in frequency and severity until ultimately terminating IVORY's employment in retaliation.

101)    A causal connection exists between the complaints to Bouchard made by IVORY with regard to the discriminatory treatment (i.e. a statutorily protected expression) and the adverse employment faced by IVORY, namely her termination.

102)    PBA ultimately terminated IVORY for pretextual reasons as a result of her complaints of harassment and discrimination due to her race, color, and sex.

103)    As a direct and proximate result of PBA's conduct and its employees' actions, IVORY has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits which she would have continued to receive had she not been unlawfully terminated.

104)    What is more, the unlawful employment practices complained of above committed by PBA were willful, wanton, intentional, and with malice or with reckless indifference to IVORY's statutorily protected rights, such that IVORY is entitled to punitive damages.

105)    IVORY has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

## COUNT VII – HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

106)    Plaintiff IVORY realleges and incorporates by reference the allegations in paragraphs 1 through 25 above as if fully set forth herein.

107)    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

108)    The phrase "terms, conditions, or privileges of employment" as included in 42 U.S.C. § 2000e et seq. evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work

in a discriminatorily hostile or abusive environment.  See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

109)     A hostile work environment exists, in violation of 42 U.S.C. Sect. 2000(e), et seq., when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

110)     IVORY is a Black woman and guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

111)     IVORY, at all times relevant herein, was qualified for her position as an Administrative Assistant and later as Assistant Campus Registrar.

112)     During the course and scope of her employment with PBA, as described fully in the General Allegations, IVORY was subjected to unwelcomed harassment and discriminatory treatment because of her race, color, and sex. Despite being a hardworking employee with a demonstrated record of exceptional service, PBA and its management actively mistreated IVORY, treating IVORY differently compared to similarly situated non-Black and non-female employees and ultimately terminating her employment on the basis of her race and sex.

113)     PBA's management received reports of these incidents and the hostile work environment they created directly from IVORY herself.

114)     At that time, PBA was alerted to the ongoing discriminatory and harassing treatment IVORY was experiencing on a daily basis from her direct supervisor, Ms. Bouchard, and other members of PBA management.

18

115)    Notwithstanding IVORY's complaint, PBA took no further action at that time to resolve the discriminatory treatment against IVORY. Instead, PBA allowed the discriminatory treatment and ongoing harassment to continue until IVORY was ultimately terminated.

116)    The discrimination and harassment experienced by IVORY was sufficiently severe and pervasive to create a discriminatory and abusive working environment.

117)    IVORY, who was the victim of race and color-based discrimination, sexual harassment, and retaliation, was subsequently terminated by PBA.

118)    PBA's unlawful employment practices, as complained of above, deprived IVORY of her statutory rights under Title VII.

119)    PBA and its employees/agents discriminated against IVORY with respect to her employment by subjecting IVORY to continued discriminatory treatment and a hostile work environment.

120)    PBA's actions are in violation of Title VII because PBA discriminated against IVORY and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of IVORY's employment and thereby damaging her.

121)    As a direct and proximate result of PBA's conduct and its employees' actions, IVORY has suffered irreparable harm through the reassignment of her position and oversight responsibilities, loss of gainful employment and the loss of valuable employment benefits, including benefits which she would have continued to receive had she not been forced to resign.

122)    What is more, the unlawful employment practices complained of above committed by PBA were willful, wanton, intentional, and with malice or with reckless indifference to IVORY's statutorily protected rights, such that IVORY is entitled to punitive damages.

123)     IVORY has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause of action.

### COUNT VIII – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

124)     Plaintiff IVORY realleges and incorporates by reference the allegations in paragraphs 1 through 25 above as if fully set forth herein.

125)     A hostile work environment claim arising from the FCRA is analyzed under the same laws applicable to Title VII claims.

126)     A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

127)     IVORY is a Black woman and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

128)     IVORY, at all times relevant herein, was qualified for her position as an Administrative Assistant and later as Assistant Campus Registrar.

129)     During the course and scope of her employment with PBA, as described fully in the General Allegations, IVORY was subjected to unwelcomed harassment and discriminatory treatment because of her race and color. Despite being a hardworking employee with a demonstrated record of exceptional service, PBA and its management actively mistreated

20

IVORY, treating IVORY differently compared to similarly situated non-Black and non-female employees and ultimately terminating her employment on the basis of her race and sex.

130)     PBA's management received reports of these incidents and the hostile work environment they created directly from IVORY herself.

131)     At that time, PBA was alerted to the ongoing discriminatory and harassing treatment IVORY was experiencing on a daily basis from her direct supervisor, Ms. Bouchard, and other members of PBA management.

132)     Notwithstanding IVORY's complaint, PBA took no further action at that time to resolve the discriminatory treatment against IVORY. Instead, PBA allowed the discriminatory treatment and ongoing harassment to continue until IVORY was ultimately terminated.

133)     The discrimination and harassment experienced by IVORY was sufficiently severe and pervasive to create a discriminatory and abusive working environment.

134)     IVORY, who was the victim of race and color-based discrimination, sexual harassment, and retaliation, was subsequently terminated by PBA.

135)     PBA's unlawful employment practices, as complained of above, deprived IVORY of her statutory rights under the FCRA.

136)     PBA and its employees/agents discriminated against IVORY with respect to her employment by subjecting IVORY to continued discriminatory treatment and a hostile work environment.

137)     PBA's actions are in violation of the FCRA because PBA discriminated against IVORY and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of IVORY's employment and thereby damaging her.

138)     As a direct and proximate result of PBA's conduct and its employees' actions, IVORY has suffered irreparable harm through the loss of gainful employment and the loss of valuable employment benefits, including benefits which she would have continued to receive had she not been forced to resign.

139)     What is more, the unlawful employment practices complained of above committed by PBA were willful, wanton, intentional and with malice or with reckless indifference to IVORY's statutorily protected rights, such that IVORY is entitled to punitive damages.

140)     IVORY has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause of action.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, TAKERIA IVORY, demands judgment against Defendant, GENESIS EDUCATIONAL SERVICES OF FLORIDA, INC. a Florida Profit Corporation, d/b/a PALM BEACH ACADEMY OF HEALTH & BEAUTY, and requests the following relief:

a)     A judgment in favor of Plaintiff for PBA's violations of Title VII and the FCRA;

b)     An award to Plaintiff for actual damages Plaintiff suffered;

c)     An award to Plaintiff of back pay and value of lost employment benefits;

d)     An award to Plaintiff of front pay for the years she would have worked absent PBA's discriminatory treatment;

e)     A judgment in favor of Plaintiff for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

f)      An award to Plaintiff for punitive damages Plaintiff sustained as a direct and proximate result of PBA's unlawful conduct;

g)      An award to Plaintiff for prejudgment interest on all monetary recovery obtained;

h)      An award to Plaintiff for all attorney's costs and fees reasonably incurred in connection with claims made on her behalf in this action;

i)      An injunction permanently enjoining PBA, any of its applicable officers, agents, employees, assignees, and/or persons in active concert of participation with them, from engaging in any employment practices in violation of Title VII and the FCRA; and

j)      Such other and further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 21, 2026

Respectfully submitted,

**Sconzo Law Office, P.A.**
300 Ave of the Champions, Suite 260
Palm Beach Gardens, FL 33418
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
ALEXANDER B. GAVULIC, ESQUIRE
Florida Bar No.: 1065451
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** alexander@sconzolawoffice.com
**Secondary Email:** dilma@sconzolawoffice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 21, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on Defendant at 6951 W. Sunrise Blvd., Plantation, FL 33313.

By: /s/ Gregory S. Sconzo
Gregory S. Sconzo, Esq.
Florida Bar No.: 0105553